**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ST. LUKE'S EPISCOPAL HOSPITAL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-1438 |
| | § | |
| ACORDIA NATIONAL and | § | |
| KNUST-SBO, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

This Memorandum and Order addresses the final set of issues in this ERISA dispute.

St. Luke's Episcopal Hospital seeks payment for medical treatment it provided an ERISA

plan beneficiary, Rachel Galvan, during her six-week hospital stay in 2004.   Acordia

National, the ERISA plan administrator, denied the claim on the basis of a preexisting-

condition exclusion. Prior opinions addressed federal removal jurisdiction and cross-motions

for summary judgment.  This court sent the dispute back for administrative review.  After

conducting this review, Acordia agreed to pay part of the amount St. Luke's billed.  St.

Luke's has filed a motion seeking full-billed charges as opposed to discounted charges,

interest for the delay in payment, and attorney's fees.  (Docket Entry No. 76).

Based on a careful review of the pleadings, the motion and response, the record, and

the applicable law, this court grants St. Luke's motion to receive payment at full-billed rates,

denies St. Luke's motion to receive interest, and grants in part and denies in part St. Luke's

request for attorney's fees.  The reasons are set out below.

## I.     Background

Rachel Galvan was a beneficiary under an ERISA medical insurance plan provided

through her husband's employer, KNUST.  The plan excluded coverage for medical expenses

for preexisting conditions, defined as "an Injury or Sickness or any related condition present

before the Enrollment Date, whether or not any medical advice, diagnosis, care of treatment

was recommended or received before the Enrollment Date."  (Docket Entry No. 65, Ex. A-1

at 13).  The plan stated that expenses for treating preexisting conditions would be excluded

from coverage "if medical advice, diagnosis, care or treatment was recommended or received

with respect to such Pre-Existing Condition within the six (6) month period ending on the

Participant's Enrollment Date."  (*Id.*, Ex. A-1 at 18)  Galvan enrolled in the plan in February

2004.  She was admitted to St. Luke's through the emergency room in June 2004.  During

her six-week hospital stay, Galvan was treated for a heart condition and diabetes, conditions

for which she had been treated within the six-month look-back period.  She was also treated

for a leg infection.

In 1997, St. Luke's entered into a Facility Service Agreement with Houston

Healthcare Purchasing Organization, Inc. d.b.a. PPO Next.  (Docket Entry No. 58). Under

the Facility Service Agreement, Acordia was entitled to a discount on the amounts billed by

St. Luke's, provided certain requirements were met.  The relevant portion of the Facility

Service Agreement stated as follows:

> Except where coordination of benefits applies, Payor or its
> paying agent shall make all payments due to Facility within
> forty-five (45) calendar days following receipt by Payor, or its
> paying agent, of a complete and proper claim form and other
> information required to determine the claim is payable under the
> Plan.  Failure to pay such claims within forty-five (45) days
> shall result in the loss of the discount set forth in the Agreement
> and payment will revert to full billed charges, unless Payor or its
> paying agent notifies Facility within fifteen (15) calendar days
> of receipt of the claim, of additional information or
> documentation required to pay the claim, or that the claim is
> being contested or denied and the specific reasons for the
> contesting or denying of the claim or any portion thereof.  On
> claims requiring additional information or documentation, Payor
> or its paying agent will make payment within thirty (30)
> calendar days of receipt of requested information or
> documentation from Facility.  This provision shall not, however,
> in any way, entitle Payors to delay payment beyond the time
> frame established herein.

(Docket Entry No. 76 at 2).

St. Luke's submitted bills for Galvan's treatment to Acordia.  The bills totaled

$221,210.75.  Acordia forwarded the bills to PPO Next to be repriced and discounted under

the Facility Service Agreement. PPO Next received the bills around August 3, 2004, repriced

the amounts, and forwarded an invoice for $173,491.00 to Acordia.  On August 11, 2004,

Acordia received the repriced itemized bill and St. Luke's claim for the expenses for

Galvan's medical treatment.  (Docket Entry No. 65, Ex. C at 2).  The claim showed an

admitting diagnosis code for congestive heart failure (right failure secondary to left failure)

(Code 428.00), and a principal diagnosis code for rheumatic heart failure (congestive) left

ventricular failure (Code 398.91).  The claim also identified the following diagnosis codes: acute renal failure (Code 584.9); disease of tricuspid (heart) valve (Code 397.9); arthropathy associated with infection of the lower leg (Code 711.06); ulcer of the lower limb (Code 707.10); protein-calorie malnutrition (Code 263.9); urinary tract infection (Code 599.0); pneumonia (Code 486); and dehydration (Code 276.5).  (*Id*., Ex. B-1).

Acordia concluded that it needed information from Galvan's doctors to determine whether and how the preexisting-condition exclusion applied.  In August, September, and November 2004, Acordia sent letters to Galvan's doctors asking when they had first provided care to Galvan; what diagnoses, treatments, and medications they gave and when; and the name and address of the referring physician and any physician to whom Galvan was referred. Acordia did not, however, notify St. Luke's that it needed additional information to determine whether the claim was payable, as required in the Facility Service Agreement. Acordia did not notify St. Luke's "within fifteen (15) calendar days of receipt of the claim, of additional information or documentation required to pay the claim, or that the claim is being contested or denied and the specific reasons for the contesting or denying of the claim or any portion thereof."

An internal Acordia record dated September 23, 2004 stated that the documents received at that point did not provide information about Galvan's medical treatment during the look-back period.  (Docket Entry No. 65, Ex. E at 3).  On October 20, 2004, Acordia gave approval to deny the claim but noted that information on preexisting conditions had not yet been received.  (*Id*. at 4).  On October 25, 2004, Acordia sent Galvan an Explanation of

Benefits (EOB) stating that the claim was denied until certain requested information had been received. The outstanding information was described as follows: "request was sent to doctor to determine preexisting conditions." In a preprinted paragraph in small type, the EOB stated that an appeal of an adverse benefit decision could be filed within 180 days.

In November 2004, Acordia asked its internal medical reviewer to determine whether Galvan's condition was preexisting and excluded from coverage. The reviewer considered information provided by Galvan's doctors saying she had been treated for diabetes, heart failure, and kidney failure during the look-back period and had a history of heart problems dating back to at least 2000. The reviewer concluded that during the look-back period, Galvan had received treatment for the conditions for which she was admitted to St. Luke's, making these were preexisting conditions excluded from coverage by the plan terms. The medical records, however, also showed that Galvan had received extensive treatment during her hospital stay for a septic knee, which was not treated in the look-back period.

Acordia did not send Galvan or St. Luke's a formal benefits denial. Despite the statement in the October 25, 2004 EOB that the denial was only until information was received in response to "request sent to doctor to determine preexisting condition," Acordia did not tell Galvan or St. Luke's that it had received additional information from medical care providers, what that information showed, or give an opportunity to appeal the denial and submit additional information.

On January 13, 2005, St. Luke's counsel sent a letter by certified mail to KNUST SBO (Attn: Human Resources) and Acordia (Attn: Claims/Appeals Dept.), threatening legal

action for the claim denial.  That letter stated:  "In the event that your policy/plan requires

or provides for an appeal of your decision to deny all/some benefits, please accept this letter

as the Hospital's formal request for an appeal of your denial."  St. Luke's counsel sent

another copy of the letter to Acordia on February 10, 2005, after Acordia advised St. Luke's

that it did not have a copy of the January letter.  On March 22, 2005, when Acordia had not

responded to St. Luke's letters and had not treated St. Luke's demands as requesting an

appeal on Galvan's behalf, St.  Luke's filed suit in state court, seeking payment for the

undiscounted amount of $221,210.75 billed in August 2004.

The defendants timely removed on the basis of ERISA preemption.  The court denied

St. Luke's motion to remand and later affirmed the denial in a memorandum and opinion

denying a motion to reconsider.  In an amended pleading, St. Luke's added an ERISA claim.

In February 2007, this court granted Acordia's motion for summary judgment and denied St.

Luke's cross-motion as to the negligent misrepresentation claim, denied both parties' motions

for summary judgment as to the ERISA claim, and remanded the ERISA claim to the plan

administrator to allow a review by the Plan Benefit Committee in accordance with ERISA

and the plan requirements.  (Docket Entry Nos. 67, 68).  On April 3, 2007, the Plan Benefit

Committee completed its review.  The Committee reversed the denial of the claimed

expenses for treating Galvan's infected left knee and affirmed the denial of the remaining

expenses relating to preexisting conditions.

The Plan Benefit Committee asked St. Luke's to submit an itemized statement for the

treatment and care relating to the infected left knee.  On April 26, 2007, St. Luke's submitted

a report from Dr. Philip Pirtle that segregated the amounts for treating Galvan's preexisting

heart condition and diabetes from the amounts for treating Galvan's septic knee.  The report

attributed $92,792.75 out of the $221,210.75 billed to treatment relating to Galvan's infected

knee.  Acordia agreed with the allocation of covered and noncovered expenses.  The revised

and segregated septic knee claim did not include a new Diagnosis-Related Group ("DRG")

code number for the septic knee condition, which Acordia needed to process the claim.

Acordia contacted St. Luke's about the missing DRG code on May 8, 2007.  St. Luke's

submitted the code number, 242 (septic arthritis), on June 13, 2007.  On June 15, 2007,

Acordia issued an EOB stating that St. Luke's would be paid $66,283.80.  This figure applied

the contractual discount to the $92,792.75 covered amount.  Acordia sent St. Luke's a check

for $66,283.80 on June 29, 2007.  (Docket Entry No. 78 at 2–4).

St. Luke's is not challenging the determination of what expenses were covered.  St.

Luke's challenges the application of the discount and seeks interest and fees.  (Docket Entry

No. 76).  Acordia has responded.  (Docket Entry No. 78).

## II.     Full-Billed Charges

Under the Facility Service Agreement, Acordia is entitled to a discount on charges for

medical service provided by St. Luke's if payment is made within forty-five days of the

receipt of a "complete and proper claim form and other information required to determine

the claim is payable under the Plan," unless Acordia notified St. Luke's within "fifteen (15)

calendar days of receipt of the claim, of additional information or documentation required

to pay the claim, or that the claim is being contested or denied and the specific reasons for

the contesting or denying of the claim or any portion thereof." If additional information or documentation is required, payment must be made within 30 calendar days of receipt of "requested information or documentation" from St. Luke's.

Acordia argues that St. Luke's did not submit "a complete and proper claim form and other information required to determine the claim is payable under the Plan" in August 2004 because the claim showed an admitting diagnosis and principal diagnosis of congestive heart failure, which was a preexisting condition. Acordia's argument is unpersuasive. St. Luke's submitted a claim that included diagnostic codes and records showing the treatment that Galvan had received. Acordia requested additional information from Galvan's doctors to enable it to determine whether all or part of the claim was subject to the preexisting-condition exclusion. Acordia's need for additional information did not make the claim form St. Luke's submitted either improper or incomplete. Under the parties' Facility Service Agreement, Acordia was obligated to make payment within forty-five days after receiving the claim unless it notified St. Luke's within fifteen days after receiving the claim that it required additional information "to determine the claim is payable under the Plan" or that it was contesting all or part of the claim. Acordia failed to do so. The Agreement states the consequence of failing to pay within forty-five days, to notify the facility within fifteen days that more information was needed, or to notify the facility within fifteen days that all or part of the claim was contested or denied: forfeiting the discount.

Acordia contends that St. Luke's is not entitled to full-billed charges because an administrator's failure to comply with ERISA's procedural requirements "generally does not

give rise to a substantive damage remedy." *Hines v. Mass. Mut. Life. Ins. Co.*, 43 F.3d 207,

211 (5th Cir. 1995); *accord Lewandowski v. Occidental Chem. Corp.*, 986 F.2d 1006, 1008

(6th Cir. 1993).  Forfeiting the discount for failing to meet the contractual requirement that

Acordia timely pay or timely notify the facility that it needs more information is not a

substantive damage remedy for failure to comply with an ERISA procedural requirement.

St. Luke's is entitled to payment without discount.  The amount due is $92,792.75.

## III.    Late-Payment Interest

St. Luke's asks this court to exercise its equitable power to award interest on the

amount owed from thirty days after it was "due" to the date of payment.  (Docket Entry No.

76 at 3).  St. Luke's argues that this equitable remedy is justified because of the extended

delay.   Acordia responds that St. Luke's caused the delay in payment by engaging in

excessive litigation and insisting on payment for all the treatment Galvan received, long after

it was clear that the preexisting conditions exclusion applied to at least some of the treatment

expenses.  (Docket Entry No. 78).

An equitable award of interest is not appropriate in this case because both parties

contributed to the delay in payment.  Acordia delayed in notifying St. Luke's of the need for

more information and in responding to demands for payment.  Even after the application of

the preexisting-condition exclusion was known, St. Luke's asserted that it was entitled to

payment for all the services rendered and spent significant time and effort litigating issues

unrelated to the merits of the coverage disputes.  An equitable award of interest is not

warranted.

**IV.     Attorney's Fees**

St. Luke's also asks this court to use its discretion to award attorney's fees.  ERISA

provides that "[i]n any action under this subchapter . . . by a participant, beneficiary, or

fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action

to either party."  29 U.S.C. § 1132(g)(1); *see also Wade v. Hewlett-Packard Dev. Co. LP*

*Short Term Disability Plan*, 493 F.3d 533, 542 (5th Cir. 2007).  A two-step analysis is

required.  *Todd v. AIG Life Ins. Co.*, 47 F.3d 1448, 1459 (5th Cir. 1995).  First, the court must

first determine whether the party is entitled to attorney's fees by applying the five factors

enumerated in *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980).

*Todd*, 47 F.3d at 1459.  The factors are: (1) the degree of the opposing party's culpability or

bad faith; (2) the ability of the opposing party to satisfy an award of attorney's fees; (3)

whether a fee award would deter other persons acting under similar circumstances; (4)

whether the party seeking fees sought to benefit all participants and beneficiaries of an

ERISA plan or to resolve a significant question regarding ERISA itself; and (5) the relative

merits of the parties' positions.  "[W]hen considering a request for attorney's fees under

§ 502(g) of ERISA, the court should consider and explicate the five *Bowen* factors, and

should do so without giving predominance or preclusive effect to any one of them; and the

court should also consider relevant non-*Bowen* factors, if there are any."  *Riley v. Adm'r of*

*Supersaver 401K Capital Accumulation Plan for Employees of Participating AMR Corp.*

*Subsidiaries*, 209 F.3d 780, 782–83 (5th Cir. 2000).

If the district court determines under the five-factor *Bowen* test that a party is entitled

to attorney's fees, the lodestar method is then used to determine the amount to be awarded. *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 822 (5th Cir. 1997); *Todd*, 47 F.3d at 1459. Under this method, the district court must determine the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating attorneys, multiplying the figures to arrive at the "lodestar." *Wegner*, 129 F.3d at 822; *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). The lodestar is then adjusted upward or downward, depending on the circumstances of the case, after assessing the dozen factors[1] set forth in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717–19 (5th Cir. 1974). *Kellstrom*, 50 F.3d at 329. "'[O]f the *Johnson* factors, the court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel.'" *Saizan*, 448 F.3d at 800 (quoting *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998)). The lodestar may not be adjusted due to a *Johnson* factor, however, if the creation of the lodestar amount already took that factor into account; to do so would be impermissible double counting. *Id.*

"The most critical factor in determining an attorney's fee award is the degree of success obtained. Prevailing party status may say little about whether the expenditure of

---

[1]In *Johnson v. Georgia Highway Express, Inc.*, the Fifth Circuit laid out the factors that a court should consider in determining whether to adjust the lodestar, including: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) the award in similar cases. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir.1974).

11

counsel's time was reasonable in relation to the success achieved." *Saizan*, 448 F.3d at 800 (quotations and footnotes omitted); *see also Washington v. Phila. County Court of Common Pleas*, 89 F.3d 1031, 1042 (3d Cir.) (calling it a "settled principle . . . that counsel fees should only be awarded to the extent that the litigant was successful"). If "a plaintiff has achieved only partial or limited success," the lodestar "may be an excessive amount. This will be true even when the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). "There is no precise rule or formula for making these determinations," and if the court makes a downward adjustment for partial success, it "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id*. at 436-37.

There is no evidence that Acordia acted in bad faith in delaying payment pending review of the claim to analyze the preexisting condition exclusion. But Acordia was "culpable" in failing to notify St. Luke's and Galvan of the status of the claim. Acordia's failure to notify St. Luke's that it needed additional information to determine preexisting conditions, or to reply to St. Luke's letters, led to the need for litigation to resolve this case.

The third factor asks whether a fee award would deter others acting in similar circumstances. Acordia's failure to notify St. Luke's of the need for more information on how the preexisting-condition exclusion applied contributed to the delay and expense necessary to resolve this claim. Shortly after the claim was remanded to the Plan Benefit Committee for review, it was resolved. Awarding fees for the work necessary to file suit, to resolve a claim that should have been administratively resolved, could deter similar failures

to communicate.

St. Luke's did not seek to benefit all plan beneficiaries or to resolve a significant question regarding ERISA itself.  This factor does not support a fee award.

The relative merits of the parties' positions supports awarding some, but far from all, of the fees St. Luke's seeks.  St. Luke's asks for an award of all the fees it incurred, but St. Luke's did not recover all the expenses it claimed.  Rather than recovering $221,210.75, as originally demanded, St. Luke's is recovering $92,792.75.  And a significant portion of the fees St. Luke's seeks is for time and work unrelated to the merits of the coverage dispute.

The *Bowen* factors lead this court to conclude that some fee award to St. Luke's is appropriate, but the reasonable amount of attorney's fees is far less than St. Luke's seeks. St. Luke's is ultimately recovering $92,792.75 in this suit, approximately 42% of the $221,210.75 it originally sought.  An equivalent reduction in the requested fee award would result in a $28,000 fee award.  *See Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 629 (4th Cir. 1995) (upholding lodestar reduction from $9,783.63 to $500.00 because damages award "was a mere five percent of the amount of statutory damages [plaintiff] initially sought"). Even this reduced amount would be excessive because much of this amount was incurred in litigating issues unrelated to the merits of the coverage dispute.

This case should have been resolved administratively.  The administrative system established under ERISA is designed to avoid precisely this sort of protracted litigation that results in attorney's fees that approach the benefits at issue. *See McLeod v. Hartford Life and Accident Ins. Co.*, No. Civ. A. 01-4295, 2004 WL 2203711, at *3 (E.D. Pa. Sept. 27, 2004)

13

(stating that "ordinarily questions of eligibility for benefits under an ERISA plan should be resolved by the plan administrator in the first instance, not by a court."). St. Luke's is entitled to the fees it expended up to and including the filing of this suit. Those fees resulted from Acordia's failure to notify St. Luke's of the need for more information to determine coverage and of the actions taken. But the fees both sides incurred after suit was filed, through remand to the Plan Review Board, were largely for work unrelated to the merits of the coverage dispute.

*Bowen* supports awarding some of St. Luke's attorney's fees. The lodestar analysis results in a fee award to St. Luke's of $3,187.50. *See Wegner*, 129 F.3d at 822.

## V.    Conclusion

St. Luke's motion to recover full-billed charges of $92, 792.75 is granted. The motion to recover interest is denied. Attorney's fees are awarded in the amount of $3,187.50.

The parties are to submit a proposed final judgment or statement identifying any remaining issues no later than March 21, 2008.

SIGNED on March 7, 2008, at Houston, Texas.

_____
                     Lee H. Rosenthal
                United States District Judge